## Bowen and another, Admrs., vs. Burnett.

1. CLAIM AND IMPROVEMENTS ON PUBLIC LANDS NOT ASSETS.  A squatter's claim on the public lands, and improvements made by him thereon, are not assets in the hands of his executor or administrator.
2. INVENTORY AND APPRAISAL MAY BE CORRECTED.  If a judge of probate errs in directing a claim to be inventoried and appraised, which is not assets, he has the right and it is his duty, to correct the error when discovered.
3. ADMINISTRATOR.    The acts of an administrator under the mistaken direction of the judge of probate are not culpable, but are entitled to indulgence.
4. RECOVERY IN CASE OF A DEVASTAVIT.  Where an administrator has committed a devastavit of an insolvent estate, the most that a creditor can recover against him is his *pro rata* share of the assets.

ERROR to the District Court for *Crawford* County.

Action brought by *John Burnett* against *Elias S. Bowen* and *Jared Warner*, administrators of the estate of Christopher Bowen, deceased.   The case is stated in the opinion of the court.

*J. T. Mills,* for plaintiffs in error.

1. The judgment which was the foundation of this action, having been obtained before the lapse of one year

from the time of granting administration on the estate of the defendant's intestate, was a nullity.

2. The administrators were justifiable in making the payments in question, because they then supposed the estate was solvent. Suffering a judgment by default is not an admission of assets. Wis. Stat. 213 ; 12 Mass. 571.

3. They are responsible only for the sum actually wasted (2 Wms. Exrs. 1108 ; 4 Call. 380), and a mistake of administrators as to the property inventoried, and its liability, will not bind them. 9 Gill & J. 174. Payment before the insolvency of an estate is known, or through mistake, is not a *devastavit.* 4 Call. 303 ; 7 Pick. 46.

4. If they are liable at all, it is only for the plaintiff's *pro rata,* in proportion to the whole amount of assets and debts. 17 Mass. 380.

*T. P. Burnett,* for defendant in error.

IRVIN, J. This case is so fully set out in the bill of exceptions allowed by the judge who tried the cause, that it is deemed unnecessary to make any other statement of it. That bill is in the words and figures following : " Be it remembered that on the 11th day of May, 1846, before the Hon. Charles Dunn, judge of the first judicial district, came as well the said plaintiff by T. P. Burnett his attorney, as the said defendant by Brunson and Mills their attorneys, the right of trial by jury being waived and the matters of fact and law submitted to the court. The following facts were proven before the court by the witnesses respectively offered by the parties, and the points and matters of law hereinafter recited were insisted on by the defendants. It was shown by the record and evidence of J. H. Lockwood, the judge of probate of said county, that Christopher Bowen died intestate in the month of September, 1840, that said defendants became his administrators by letters taken out in October thereafter — that appraises were appointed, and at December term, 1840, of said probate court, an inventory of the estate of said

intestate was returned by said *Elias S. Bowen* and sworn to by him.

It appears from said inventory that exclusive of the property set apart to the widow, there was stock and personal property to the amount of $442.45, and in addition thereto an improved unentered claim on public land in said county valued at $1,600, which said judge ordered to be appraised and charged to said administrators, that said judge of probate, on the 12th of June, 1841, learning that an unentered claim was not legal assets, did decide that said claim should be rejected from the inventory and advised the said defendants in consequence thereof to report said estate insolvent, which the administrators then acordingly did ; and the said administrators realized nothing from said claim. It also appeared from the final settlement of the estate, which was made in March, 1842, that, besides said claim, the defendants were allowed $60.50 for unavoidable losses, that the unpaid debt of said Christopher Bowen, deceased, as proven before the insolvent commissioners who made report in January, 1842, were $1,361.26.

It further appeared that at the May term, 1841, Marsh, Pelton, and said plaintiff severally obtained judgments against said administrators. Marsh in the sum of $86.25 ; Pelton in the sum of $91.87 ; and said plaintiff in the sum of $287.25, on which judgment the present action was brought,

That, on the 26th of May, 1841, said Pelton levied on the property of said estate and sold assets to the amount of $114.52 (his judgment and costs) ; that on the 5th of June, 1841, *Elias Bowen*, one of administrators, voluntarily paid Marsh $93.46 (his judgment and costs), and on the 10th of June, thereafter, this plaintiff, the said *Burnett*, ordered execution out on his said judgment, and sold property to the amount of $9.78 ; that said *Elias S. Bowen* voluntarily paid a debt to one Savage out of the assets of the estate of $44 in the winter of 1840–41 ; and the evidence being closed on the hearing of said cause,

it was then and there insisted upon by the attorneys of the defendants that the plaintiffs ought not to recover, because :

1. The judgment of said plaintiff, on which his said action is brought, is a nullity, having been obtained within a year from the administrators taking upon themselves that trust.

2. That said administrators were legally justifiable in paying Pelton, Marsh, and Savage, while they retained as appeared from this inventory, a claim on public lands and other property, more than sufficient to discharge the debts of said estate.

3. That if said administrators had actually committed a *devastavit* in paying Pelton, Marsh and Savage, they were only responsible to the plaintiff, a creditor, for the sum actually wasted, and no further.

4. That, inasmuch as the estate became insolvent on the 12th of June, 1841, and as the amount of unpaid debts is considerable, that said plaintiff could obtain but his *pro rata* of property wasted, if any such there was.

And the counsel for the plaintiff did then and there insist, that said judgment obtained by said *Burnett* was not a nullity, that said administrators were not legally justifiable in discharging the judgments of Marsh and Pelton, and paying the debt due to Savage at the time they paid the same ; that if said administrators did pay and misapply the assets in the discharge of said demands, they were responsible to the said plaintiff for the whole amount of his judgment on which he now sues, and that although the estate did become insolvent on the 12th of June, 1841, and although there are now large demands against said estate wholly unpaid ; yet that the said plaintiff was not only entitled to his *pro rata* of the sums misapplied, but to the whole amount of his said judgment, and the court being then and there sufficiently advised, did decide that the judgment on which said plaintiff brought his action was a good and valid judgment ; that said administrators were not legally justifiable in paying

Marsh and Savage, and allowing Pelton to collect his debt by execution, though at that time said land claim was regarded by them as assets applicable to the payment of creditors and on their inventory ; that if said administrators committed a *devastavit* by paying Marsh, Pelton or Savage, they were responsible to said plaintiff for the whole amount of his debt or claim, and that said plaintiff was entitled to his entire judgment against these administrators though their intestate's estate became insolvent on the 12th of June, 1841, and although there is a large amount of debts still remaining unpaid ;" to which decisions, etc., exceptions were taken.

An improved unentered claim is not assets in the hands of an executor or administrator, and when the judge of probate, upon being informed that the intestate had died in the possession of an improved claim upon public land, directed the administrators to have it appraised as assets, he committed an error, and having jurisdiction of the subject, when he became satisfied that he had fallen into error, it was his duty to correct that error at the earliest moment when he properly could do so. With this claim as assets, the estate was clearly solvent, without it, it was as clearly insolvent. Being satisfied that the direction to appraise it was wrong, he advised that the estate be returned as insolvent, which was done accordingly. The payment of debts made during the existence of this judicial mistake, it is fair to infer, was made under its influence, and if so, they were innocently made, and with none of that culpability which naturally attaches to the idea of a *devastavit ;* under which circumstances the administrators would be entitled to the fullest indulgence of the law. By the laws of this Territory (Rev. Stat. 303), provision is made for the settlement of estates by which debts of dignity are first to be paid, and the rest, when the estate is not insolvent, are to be paid *pro rata.* The most then that could have been had by the plaintiff in this case, had all the proceedings by the administrators been regular, would have been a *pro*

*rata* payment, but as irregularities in the course pursued by the administrators, have intervened, subjecting them to a *devastavit*, all that under the circumstances, the plaintiff below could rightfully recover as on a *devastavit*, would be his *pro rata* share of the assets of the estate. To this conclusion we are drawn from examination of the authorities with reference to the facts and circumstances in this case.    See 4 Call. 308 ; 8 Mass. 282 ; 17 id. 380 ; 3 Pick. 261 ; 7 id. 46.

The district court therefore erred in giving judgment for the full amount of the plaintiff's demand, and the judgment must be reversed with costs.

DUNN, C. J., *dissenting.*